# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARL COTTON, | No. 4:19-CV-01359 |
| Plaintiff, | (Judge Brann) |
| v. | |
| PETE DAMITER, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### SEPTEMBER 2, 2020

Plaintiff Earl Cotton, a prisoner presently confined at the State Correctional Institution at Frackville in Frackville, Pennsylvania, filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging various First Amendment retaliation claims related to his incarceration.[1] Defendants have filed a motion to dismiss the amended complaint, which is now ripe for disposition.[2] For the reasons that follow, the Court will grant in part the motion.

### I.    FACTUAL BACKGROUND

Plaintiff is a Pennsylvania state prisoner who at all times relevant to the amended complaint was a prisoner at SCI Frackville.[3] In 2018, Plaintiff, along with other prisoners, received information that Defendant Activities Manager Pete

---

[1] Doc. 1.
[2] *See* Doc. 19.
[3] Doc. 18 at 1-2.

Damiter was misappropriating money allocated for the Inmate General Welfare Fund ("IGWF").[4]  Plaintiff, together with a few others, drafted a letter to Pennsylvania Attorney General Josh Shapiro requesting a forensic audit of IGWF spending, which was transmitted to him through non-party attorney Rachel Wolkenstein.[5]  The letter explained that Defendant Damiter was using IGWF funds to employ his personal friends for services provided to the inmates.[6]

In December 2018, Plaintiff submitted a grievance to Defendant Program Manager Kelly O'Kane, asking why Defendant Damiter was permitted to select the inmate representatives for the IGWF committee, rather than be selected by the inmates themselves.[7]  She responded that "a memo went to each block and candidates were interviewed."[8]  He again wrote to Defendant O'Kane, expressing concern that Defendant Damiter was using IGWF funds as a source of income for family and friends.  Defendant O'Kane responded that "IGWF funds are audited by an outside source.  If there are any discrepancies, they will be addressed."[9]

Plaintiff next wrote to non-party Secretary of the Department of Corrections John Wetzel on April 10, 2019 expressing concern about the alleged misuse of IGWF funds and advising that he had been retaliated against by being removed from

---

[4]  *Id.* at 2.
[5]  *Id.* at 3.
[6]  *Id.*
[7]  *Id.*
[8]  *Id.*
[9]  *Id.*

2

single cell status.[10]  He received a response that the DOC does not condone inappropriate treatment.[11]

On March 28, 2019, Plaintiff was ordered to move from his single cell to a double bunk cell.[12]  Plaintiff feared for his safety because Defendant Damiter was overheard making the threat that he "would like to put someone in Plaintiff's cell to kill him in his sleep," and refused to move to a double bunk cell.  He was then placed in the restricted housing unit ("RHU").[13]  Plaintiff filed a grievance asserting that his removal from single bunk status was in retaliation for requesting a forensic audit of Defendant Damiter.[14]  That grievance was denied on April 5, 2019 by Defendant Deputy Facility Manager James Meintel, who Plaintiff generally alleges also played a part in his removal from single bunk status.[15]

On April 12, 2019, Defendant Unit Manager James Wessinger issued a disciplinary report for Plaintiff claiming that Plaintiff refused to take a cellmate, which Plaintiff says is false.[16]  As a result of the disciplinary report, Plaintiff received thirty days of disciplinary confinement and was removed from his job in the gym.[17]  During the disciplinary review proceedings, Defendant Wessinger was a member of

---

[10]  *Id.* at 3-4.
[11]  *Id.* at 4.
[12]  *Id.*
[13]  *Id.*
[14]  *Id.* at 4.
[15]  *Id.*
[16]  *Id.*
[17]  *Id.*

the program review committee ("PRC"), even though he issued the disciplinary report.[18] After appealing the disciplinary report, non-party Facility Manager Brittain remanded the matter because Defendant Weissinger should not have been part of the PRC.[19] After the matter was remanded back to the PRC, the disciplinary sanction was upheld.[20]

While in the RHU, Plaintiff was reevaluated for a single cell status.[21] Plaintiff was again assigned single cell status and was released from the RHU, presumably into a single cell.[22]

Plaintiff alleges that Defendants Damiter, O'Kane, Weissinger, and Meintel acted to remove Plaintiff's single cell status and to issue a false misconduct report in retaliation for Plaintiff's request for a forensic audit of the IGWF funds.[23] Curiously, Plaintiff also names as a defendant Grievance Coordinator/Superintendent's Assistant Jennifer Newberry, although there are no allegations against her in the complaint.[24]

## II.   STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim

---

[18]   *Id.*
[19]   *Id.* at 5.
[20]   *Id.*
[21]   *Id.*
[22]   *Id.*
[23]   *Id.*
[24]   *See generally* Doc. 18.

showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim.[25] When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations.[26] The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[27]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[28] The court need not accept unsupported inferences,[29] nor legal conclusions cast as factual allegations.[30] Legal conclusions without factual support are not entitled to the assumption of truth.[31]

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense

---

[25] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[26] *See Erickson v. Pardus*, 551 U.S. 89, 94 (per curiam).
[27] *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).
[28] *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).
[29] *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).
[30] *Twombly*, 550 U.S. at 556.
[31] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

5

review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face."[32] A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[33] The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[34]

## III. DISCUSSION

Defendants argue that the Court should dismiss the amended complaint because (1) Plaintiff cannot state a claim for retaliation against defendants, (2) Plaintiff has failed to exhaust his administrative remedies, (3) certain Defendants lack the personal involvement required to sustain a § 1983 claim against them, and (4) Plaintiff has failed to allege an Eighth or Fourteenth Amendment claim regarding the denial of single bunk status.

Plaintiff has brought his constitutional claim pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the

---

[32] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[33] *Id.*
[34] *See* Fed. R. Civ. P. 8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

6

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[35] "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[36]

In order to establish a First Amendment retaliation claim, a plaintiff must prove that (1) his conduct was constitutionally protected, (2) he suffered an adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.[37] The United States Court of Appeals for the Third Circuit has explicitly held that filing complaints, grievances, and civil actions all constitute constitutionally protected conduct.[38] Thus, Plaintiff has established that he was engaged in constitutionally protected conduct when he filed complaints and grievances regarding the use of IGWF funds.

---

[35] *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).
[36] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).
[37] *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).
[38] *See, e.g.*, *Watson*, 843 F.3d at 422-23; *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Next, an adverse action is one "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."[39] An adverse consequence "need not be great in order to be actionable," rather, it need only be "more than *de minimis*."[40] A disadvantageous change in housing assignment and the loss of ability to participate in certain prison programs have both been identified as adverse actions in the context of a First Amendment retaliation claim.[41] Thus, Plaintiff has also established the second prong of a *prima facie* retaliation case regarding his change to a double cell/denial of single cell status and also his reassignment to the RHU.

Generally, plaintiffs can satisfy the third prong by alleging either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link.[42] When the timing is not so proximate as to be "unduly suggestive," the appropriate test is "timing plus other evidence."[43] Here, the timing between Plaintiff's complaints, grievances, and letter writing about the IGWF funds and his removal of single cell status is suggestive of potential retaliation, but not unduly so. Coupled with Defendant Damiter's statement that he "would like to put someone in Plaintiff's cell to kill him in his sleep," and Defendant Weissinger's

---

[39] *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal quotation marks omitted).
[40] *Watson*, 834 F.3d at 423 (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).
[41] *See Watson*, 834 F.3d at 423.
[42] *See id.*
[43] *See id.*

8

issuance of a misconduct report, however, these events are together sufficient to establish at this early stage that Plaintiff's protected conduct was a substantial or motivating factor in the decision to move Plaintiff from a single to a double cell.

As to Defendants O'Kane, Meintel, and Newberry, Plaintiff has failed to establish a *prima facie* case of retaliation against them. Defendant O'Kane last responded to one of Plaintiff's grievances regarding Defendant Damiter/the IGWF funds on December 12, 2018. This is not proximate in time to any act of retaliation, and there are no allegations that could otherwise suggest a substantial or motivating factor on the part of Defendant O'Kane. Likewise, although Plaintiff alleges in a conclusory manner that Defendant Meintel "played an integral part in removal of Plaintiff's Z-Code [single cell status]," Plaintiff fails to provide any substantive allegations regarding the role played by Defendant Meintel. And the only other allegation against Defendant Meintel is that he denied Plaintiff's grievance. Finally, there are simply no factual allegations against Defendant Newberry at all, and thus no case of retaliation can be made against her.

Defendants also argue that the Court should dismiss the amended complaint because Plaintiff "has failed to include sufficient allegations demonstrating that he exhausted his administrative remedies with respect to the retaliation claim." Although it is true that the Prisoner Litigation Reform Act of 1996 requires prisoners

9

to exhaust claims related to prison life,[44] it contains no requirement that a plaintiff must affirmatively plead exhaustion in a civil action.[45]  Rather, the Third Circuit has explicitly held that a defendant must plead and prove failure to exhaust as an affirmative defense.[46]  Defendants have failed to do so here, presenting no evidence of a failure to exhaust, and the defense cannot be established from the allegations pled by Plaintiff in the amended complaint.  The motion to dismiss is therefore denied in this regard, although Defendants are certainly entitled to file an appropriate motion raising this affirmative defense in the future.

The Court will dismiss Defendants Jennifer Newberry, Kelly O'Kane, and James Meintel for lack of personal involvement.  "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"[47]  Defendant Newberry is not mentioned in the allegations of the amended complaint.  Her title is listed as "Grievance Coordinator/ Superintendent's Assistant," which suggests that she may have been involved in responding to one of Plaintiff's grievances.  A prisoner's allegation that prison officials received or responded to a grievance, however, does not establish that the officials were

---

[44]   *See* 42 U.S.C. s 1997e(a).
[45]   *See Rays v. Kertes*, 285 F.3d 287 (3d Cir. 2002).
[46]   *See id.* at 295.
[47]   *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007).

involved in the underlying allegedly unconstitutional conduct.[48] Similarly, both the involvement of Defendants O'Kane and Meintel is limited to responding to grievances. Based on the allegations of the amended complaint, the Court cannot infer that either Defendant was personally involved in any sort of retaliation against Plaintiff. As such, the Court will dismiss Defendants Newberry, O'Kane, and Meintel for lack of personal involvement.

Finally, although Plaintiff focuses his amended complaint on his First Amendment retaliation claim, Plaintiff also references the Eighth and Fourteenth Amendments, and, as such, the Court will consider whether Plaintiff has alleged any claims here. As Defendants correctly point out, "[i]t is well established that the decision where to house inmates is at the core of prison administrators' expertise,"[49] and thus prisoners do not have a protected liberty interest arising from the Due Process Clause to be assigned to a particular custody level, security classification, or place of confinement.[50] Likewise, the denial of single bunk status, also referred

---

[48] *See Rode v. Dellaciprete,* 845 F.2d 1195, 1207-08 (3d Cir. 1988) (review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (prison officials cannot be held liable based on their failure to take corrective action when grievances were referred to them); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *Ramos v. Pennsylvania Dep't of Corrs.*, No. 06-cv-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

[49] *McKune v. Lile*, 536 U.S. 24, 39 (2002).

[50] *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005); *Thomaston v. Meyer*, 519 F. App'x 118 (3d Cir. 2013) (holding that denial of a prisoner's request for Z-code status for single bunk is not a due process violation).

to as Z-Code status, is not cruel and unusual punishment violating the Eighth Amendment.[51]  The Court will therefore dismiss any Eighth and Fourteenth Amendment claims that Plaintiff intended to assert as he cannot assert a claim under either solely for the denial of single cell status.

## IV.  CONCLUSION

Based on the foregoing, the motion to dismiss will be granted in part as to the Defendants Newberry, O'Kane, and Meintel, who will all be dismissed for lack of personal involvement.  Plaintiff's Eighth and Fourteenth Amendment claims are also duly dismissed.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[51] *Mattis v. Dep't of Corrs.*, No. 16-cv-306, 2017 WL 6406884, at *12-13 (W.D. Pa. Dec. 15, 2017).