## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EARL COTTON,

              Plaintiff,

     v.

PETE DAMITER, *et al.*,

             Defendants.

No. 4:19-CV-01359

(Chief Judge Brann)

## MEMORANDUM OPINION

### DECEMBER 8, 2021

*Pro se* Plaintiff Earl Cotton ("Plaintiff"), who is presently incarcerated in the State Correctional Institution-Frackville ("SCI-Frackville"), filed a complaint pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by SCI-Frackville prison officials. The Court previously dismissed the claims against three of the Defendants and allowed the case to proceed only as to Plaintiff's First Amendment retaliation claims against Pete Damiter ("Damiter") and James Weissinger ("Weissinger"). The remaining Defendants have moved for summary judgment. For the reasons that follow, the motion will be granted.

## I.   BACKGROUND

Plaintiff initiated this case through the filing of a complaint on August 6, 2019, naming as Defendants Kelly O'Kane ("O'Kane"), James Meintel

("Meintel"), Jennifer Newberry ("Newberry"), Damiter, and Weissinger.[1] Defendants moved to dismiss on November 20, 2019, and in response, Plaintiff moved for leave to file an amended complaint.[2]  The Court granted the motion for leave to amend,[3] and Plaintiff filed an amended complaint on December 27, 2019.[4]

The amended complaint alleges generally that sometime in 2018, Plaintiff and three other inmates in SCI-Frackville received information indicating that Defendant Damiter was misappropriating funds for personal use that were meant for the Inmate General Welfare Fund.[5]  Plaintiff and the other prisoners reported Damiter's alleged misconduct to Pennsylvania's Attorney General via a letter and requested a forensic audit of the welfare fund.[6]  Plaintiff also reported the alleged misconduct to Defendant O'Kane and John Wetzel, the secretary of the Department of Corrections ("DOC").[7]  Shortly after reporting the misconduct, Plaintiff, who had previously been given "Z Code" status allowing him not to have a cellmate, was told that he was going to move to a different cell that he would share with a cellmate.[8]  Plaintiff refused to move from his cell, and was placed in the Restricted Housing Unit ("RHU") as a result.[9]  Defendant Weissinger issued

---

[1]   Doc. 1.
[2]   Docs. 12, 14.
[3]   Doc. 17.
[4]   Doc. 18.
[5]   *Id.* at 2.
[6]   *Id.* at 3.
[7]   *Id.*
[8]   *Id.* at 4.
[9]   *Id.*

Plaintiff a disciplinary charge which claimed that Plaintiff had refused to take a cellmate.[10]  Plaintiff alleges that the decision to revoke his Z Code status and give him a cellmate and the disciplinary charge against him were done in retaliation for his actions in reporting Damiter's alleged wrongdoing.[11]  He requests nominal, compensatory, and punitive damages against the Defendants for the alleged retaliation.[12]

Defendants moved to dismiss the amended complaint on January 10, 2020.[13] I granted the motion in part on September 2, 2020, dismissing all claims against Defendants O'Kane, Meintel, and Newberry and all claims arising from the Eighth and Fourteenth Amendment, but allowing the case to proceed as to Plaintiff's First Amendment retaliation claims against Damiter and Weissinger.[14]  Defendants answered the amended complaint on September 22, 2020.[15]

Following the close of fact discovery, Defendants filed the instant motion for summary judgment on April 2, 2021 and filed a brief in support of the motion on May 17, 2021.[16]  Plaintiff opposed the motion on July 14, 2021.[17]  Defendants

---

[10]   *Id.*
[11]   *Id.* at 4-6.
[12]   *Id.* at 7.
[13]   Doc. 19.
[14]   Docs. 27-28.
[15]   Doc. 29.  Because all Defendants other than Damiter and Weissinger have been dismissed from the case, I will collectively refer to Damiter and Weissinger as "Defendants" throughout the remainder of this opinion.
[16]   Docs. 49, 57.
[17]   Doc. 62.

did not file a reply brief in support of the motion, and the deadline for doing so has

expired.  Accordingly, the motion is ripe for the Court's disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."[18]  "Facts that could alter the outcome are 'material facts,' and

disputes are 'genuine' if evidence exists from which a rational person could

conclude that the position of the person with the burden of proof on the disputed

issue is correct."[19]  "A defendant meets this standard when there is an absence of

evidence that rationally supports the plaintiff's case."[20]  "A plaintiff, on the other

hand, must point to admissible evidence that would be sufficient to show all

elements of a prima facie case under applicable substantive law."[21]

"The inquiry involved in a ruling on a motion for summary judgment or for

a directed verdict necessarily implicates the substantive evidentiary standard of

proof that would apply at the trial on the merits."[22]  Thus, "if the defendant in a

run-of-the-mill civil case moves for summary judgment or for a directed verdict

---

[18]   Fed. R. Civ. P. 56(a).
[19]   *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (first citing
       *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Celotex Corp. v.
       Catrett*, 477 U.S. 317, 322 (1986)).
[20]   *Clark*, 9 F.3d at 326.
[21]   *Id.*
[22]   *Anderson*, 477 U.S. at 252.

4

based on a lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[23] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[24] "The judge's inquiry, therefore unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[25] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[26] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates

---

[23]  *Id.*
[24]  *Id.*
[25]  *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[26]  *Celotex*, 477 U.S. at 323 (internal quotations omitted).

that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[27]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[28]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[29]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant."[30]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[31]  On a motion for summary judgment,

[27]  *Id.*
[28]  *Anderson*, 477 U.S. at 250.
[29]  Fed. R. Civ. P. 56(c)(1).
[30]  *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[31]  Fed. R. Civ. P. 56(e)(2).

"the court need consider only the cited materials, but it may consider other materials in the record."[32]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[33]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[34]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[35]

## III.   MATERIAL FACTS

Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."[36]  The non-movant must file a statement in response to the movant's statement that responds to the numbered paragraphs in the movant's statement and sets forth which paragraphs present a genuine issue of material fact.[37]  Any facts

---

[32]   Fed. R. Civ. P. 56(c)(3).
[33]   *Anderson*, 477 U.S. at 249.
[34]   *Id.*
[35]   *Id.* at 249-50 (internal citations omitted).
[36]   M.D. Pa. L.R. 56.1.
[37]   *Id.*

that are set forth in the movant's statement that are not contradicted by the non-movant's statement are "deemed to be admitted."[38]

In this case, Defendants filed a statement of material facts as required by Local Rule 56.1, but Plaintiff filed only a partial response to the statement of material facts.[39]  Accordingly, any factual assertions to which Plaintiff has failed to respond will be deemed admitted.  I will cite directly to Defendants' statement of material facts with respect to any such admitted factual assertions.  With that in mind, I turn my attention to the material facts.  For the sake of clarity, this section will only outline the material facts with respect to the merits of Plaintiff's claims.  Facts that are material to the issue of administrative exhaustion will be outlined in the exhaustion section of my analysis.

Under DOC policy, inmates who meet certain criteria such as mental health diagnoses, physical disabilities, high potential for victimization, or past aggressive behavior may be granted Z Code status allowing them to not have a cellmate.[40]  Z Code status is not permanent: it may be reviewed at any time and must be reviewed by prison staff at least once a year.[41]  When an inmate's Z Code status is reviewed, it is subject to multiple levels of review beginning with prison staff and continuing through the Regional Deputy Secretary and potentially higher ranking DOC

---

[38] *Id.*
[39] *See* Docs. 50, 63.
[40] Doc. 50 ¶ 3.
[41] *Id.* ¶ 4.

officials.[42]  The reviewing officials must review several documents in conducting

the review, including the inmate's misconduct reports, reports from prison medical

staff, and reports from other staff having knowledge of the inmate's behavior.[43]

Facility staff conducting a review of an inmate's Z Code status ultimately

vote on whether the inmate is to receive or continue with his Z Code status.[44]

Their votes are recorded on a vote sheet, which is sent to the prison's

Superintendent or other designee for a decision on the inmate's Z Code.[45]  If the

Superintendent disapproves the Z Code, the review ends, and the inmate is denied

Z Code status.[46]  If the Superintendent approves the Z Code, the vote sheet is sent

to the Regional Deputy Secretary.[47]

Plaintiff had been granted Z Code status sometime prior to the events of this

case.  In February and March 2019, eight members of the prison's staff reviewed

Plaintiff's Z Code status and recorded their votes on a vote sheet in accordance

with DOC policy.[48]  Five of the eight staff members recommended that Plaintiff's

Z Code status be continued, the other three recommended that his Z Code be

discontinued.[49]  On March 20, 2019, the Superintendent decided to discontinue

---

[42]  *Id.* ¶ 6.
[43]  *Id.* ¶ 7.
[44]  *Id.* ¶ 8.
[45]  *Id.*
[46]  *Id.*
[47]  *Id.*
[48]  *Id.* ¶ 9.
[49]  *Id.*

9

Plaintiff's Z Code after reviewing the staff members' vote sheet.[50]  Plaintiff was

informed of the decision on March 22, 2019.[51]

On March 28, 2019, a nonparty correctional officer went to Plaintiff's cell

and ordered him to move to a new cell.[52]  Plaintiff refused to move from his cell

and was issued a misconduct charge.[53]  He was placed in the RHU for

administrative custody pending a disciplinary hearing on the misconduct charge.[54]

On April 2, 2019, Plaintiff had a hearing on the misconduct charge.[55]

During the hearing, Plaintiff explained that he had refused to move because he had

had a Z Code for twenty years and the prison was taking away his Z Code.[56]

Plaintiff pled guilty during the hearing and was given fifteen days of disciplinary

custody as a sanction for the misconduct.[57]

On April 12, 2019, Defendant Weissinger went to Plaintiff's cell and told

him that his disciplinary time had expired and that he could return to general

population with a cellmate.[58]  Plaintiff responded, "I ain't taking a cellie, I'll stay

---

[50]   *Id.* ¶ 10.
[51]   *Id.* ¶ 11.
[52]   *Id.* ¶ 12.
[53]   *Id.*
[54]   *Id.*
[55]   *Id.* ¶ 13.
[56]   *Id.*
[57]   *Id.*
[58]   *Id.* ¶ 14.

here."[59]  Plaintiff was issued another misconduct and was kept in disciplinary

confinement pending a hearing on the second misconduct.[60]

On April 15, 2019, Plaintiff's Z Code status was temporarily reinstated

pending further review by prison officials.[61]  Plaintiff then had a disciplinary

hearing on the second misconduct charge on April 16, 2019.[62]  During the hearing,

Plaintiff acknowledged that he had refused to take a cellmate, but pleaded not

guilty to the misconduct charge because of his belief that Weissinger was only

suggesting that he take a cellmate and was not ordering him to take a cellmate.[63]

Plaintiff was found guilty of the misconduct and was given thirty days disciplinary

confinement as a sanction, which was retroactive to April 12, 2019.[64]  Plaintiff

appealed the disciplinary decision on April 20, 2019.[65]

Plaintiff's Z Code status was reviewed by six prison staff members in April

and May 2019.[66]  Four of the six staff members recommended that Plaintiff's Z

Code be reinstated, while the other two recommended that Plaintiff continue to not

---

59  *Id.*
60  *Id.*
61  *Id.* ¶ 15.
62  *Id.* ¶ 16.
63  *Id.*
64  *Id.*
65  *Id.*
66  *Id.* ¶ 18.

have a Z Code.[67]  Plaintiff's Z Code status was subsequently reinstated by the

Superintendent following a review of the vote sheet.[68]

## IV.    ANALYSIS

Plaintiff's constitutional claims are brought under 42 U.S.C. § 1983, which

provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate

a violation of a right secured by the Constitution and the laws of the United States

[and] that the alleged deprivation was committed by a person acting under color of

state law."[69]  "The first step in evaluating a section 1983 claim is to 'identify the

exact contours of the underlying right said to have been violated' and to determine

'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[70]

---

[67]  *Id.*

[68]  *Id.* ¶ 22.

[69]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

[70]  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

Defendants argue that they are entitled to summary judgment as to Plaintiff's § 1983 claims because Plaintiff failed to exhaust administrative remedies and because he cannot produce facts to support his retaliation claim.[71]  I analyze Defendants' arguments below.

## A.     Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), prisoner plaintiffs must exhaust all available administrative remedies before they may file suit in federal court.[72]  The statute requires "proper exhaustion," meaning the prisoner must complete the administrative review process in accordance with the procedural rules set by the prison.[73]

The DOC has two administrative remedy systems in place that are relevant to the instant motion: DC-ADM 804, which governs the filing of administrative grievances and associated appeals, and DC-ADM 801, which governs prison disciplinary hearings and associated appeals.  Defendants in this case argue that Plaintiff failed to exhaust administrative remedies under both DC-ADM 804 and DC-ADM 801.[74]  I will analyze the two arguments separately.

---

[71]  Doc. 57.

[72]  42 U.S.C. § 1997e(a); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 304 (3d Cir. 2020).

[73]  *Downey*, 968 F.3d at 305 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

[74]  Doc. 57 at 11-13.

13

### 1.     Exhaustion Under DC-ADM 804

Under DC-ADM 804, a prisoner must first submit a timely written grievance for review by the Superintendent or regional grievance coordinator within fifteen days from the date of the incident.[75]  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."[76]  If the inmate wishes to receive compensation or "other legal relief normally available from a court" as a remedy for his grievance, he "must request the specific relief sought in his/her initial grievance."[77]  A response should be received within ten business days.[78]  Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days.[79]  Again, a response should be received within ten working days.[80]  Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days, and the inmate should receive a final determination within thirty days.[81]  To fully exhaust

---

[75]   DC-ADM 804, DEPARTMENT OF CORRECTIONS, available at https://www.cor.pa.gov/ About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf
[76]   *Id.*
[77]   *Id.*
[78]   *Id.*
[79]   *Id.*
[80]   *Id.*
[81]   *Id.*

an issue or incident in accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process."[82]

The record of this case reflects that Plaintiff filed one grievance related to the facts of this case under DC-ADM 804.[83]  In the grievance, which Plaintiff filed on March 23, 2019, Plaintiff asserted that his Z Code was being discontinued in retaliation for his reporting of Damiter's alleged misconduct to the Attorney General of Pennsylvania.[84]  Plaintiff did not name Defendant Weissinger in the grievance, he did not state what relief he was seeking, and he did not identify any retaliatory misconduct citations against him.[85]

Plaintiff's grievance was denied by an initial review response on April 5, 2019.[86]  Plaintiff appealed the denial to the Superintendent on April 17, 2019.[87]  Like his initial grievance, Plaintiff's appeal did not name Defendant Weissinger, did not state what relief he was requesting, and did not identify any retaliatory

---

[82]   *Stroman v. Wetzel*, No. 1:16-CV-02543, 2019 WL 931653, at *3 M.D. Pa. Feb. 26, 2019); *see also Garcia v. Kimmell*, 381 F. App'x 211, 213 n.1 (3d Cir. 2010) ("Proper exhaustion in Pennsylvania requires completion of a three-part procedure; initial review, appeal, and final review.").

[83]   Doc. 50 ¶ 33.

[84]   Doc. 50-4.  Plaintiff's March 23, 2019 grievance is reproduced as an exhibit to Defendants' motion for summary judgment and is docketed at Doc. 50-4.  I will cite directly to the grievance and associated appeals and responses whenever appropriate.

[85]   Doc. 50-4; Doc. 50 ¶ 33.

[86]   Doc. 50 ¶ 34; Doc. 50-5.

[87]   Doc. 50 ¶ 35; Doc. 50-6.

misconduct citations.[88]  The Superintendent denied the appeal on May 13, 2019.[89]

Plaintiff appealed to SOIGA, but again failed to name Defendant Weissinger,

failed to state what relief he was requesting, and failed to identify any retaliatory

misconducts.[90]  SOIGA upheld the denial of Plaintiff's grievance on July 11,

2019.[91]

Defendants acknowledge that Plaintiff filed a grievance and subsequently

appealed the grievance through all stages of the DOC's administrative process, but

argue that Plaintiff did not properly exhaust his administrative remedies because

his grievance and subsequent appeals failed to name Defendant Weissinger, failed

to state what relief Plaintiff sought, and failed to list any retaliatory misconduct

charges that had been brought against Plaintiff.[92]

Plaintiff argues in response that his failure to name Defendant Weissinger in

the grievance filed under DC-ADM 804 was immaterial given that he was not

alleging that Weissinger was involved in the initial decision to revoke Plaintiff's Z

Code status.[93]  As for the failure to include a claim for money damages in the

grievance, Plaintiff argues that the failure should be excused because the entire

---

[88]   Doc. 50 ¶ 35; Doc. 50-6.
[89]   Doc. 50 ¶ 36; Doc. 50-7.
[90]   Doc. 50 ¶ 37; Doc. 50-8.
[91]   Doc. 58 ¶ 38; Doc. 50-9.
[92]   Doc. 57 at 11-12.
[93]   Doc. 62 at 5.

grievance process was unavailable to him.[94]  Plaintiff asserts that the grievance

process was rendered unavailable because Meintel participated in the initial

decision to revoke his Z Code status and subsequently reviewed Plaintiff's

grievance.[95]  Plaintiff argues that because Meintel was unlikely to admit that he

played in a role in any wrongdoing, "filing a grievance in the first instance was

merely an exercise in futility" and the grievance process was therefore rendered a

dead end.[96]

Having reviewed the parties' arguments and the material facts, I find that

Plaintiff failed to exhaust his administrative remedies with respect to his grievance

under DC-ADM 804.  The only remedy that Plaintiff seeks in this case is monetary

relief, but he failed to request such relief in his initial grievance or any of his

subsequent appeals.  "Because Plaintiff failed to request monetary damages in his

grievance proceedings, he did not properly exhaust his claims for such relief."[97]

Plaintiff's argument that the grievance process was unavailable to him is not

persuasive.  In order to exhaust administrative remedies under the PLRA, an

inmate must only exhaust the administrative remedies that are available to him, or,

in other words, the administrative remedies that are " capable of use' to obtain

---

[94]  *Id.* at 5-8.

[95]  *Id.*

[96]  *Id.*

[97]  *Marrow v. Lawler*, No. 1:19-CV-01690, 2021 WL 1906406, at *7 (M.D. Pa. May 12, 2021)
(citing *Johnson v. Wireman*, 809 F. App'x 97, 99 (3d Cir. 2020)).

'some relief for the action complained of.'"[98]  A grievance process is unavailable

and may be deemed exhausted in three circumstances: "(1) when the remedy

'operates as a simple dead end—with officers unable or consistently unwilling to

provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes,

practically speaking, incapable of use'; and (3) 'when prison administrators thwart

inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation.'"[99]  Although the burden to establish a

plaintiff's failure to exhaust administrative remedies ordinarily lies with the

defendants, it is the plaintiff's burden to establish that a grievance process was

unavailable.[100]

Plaintiff asserts that the DOC's grievance process operated as a simple dead

end under *Ross* because Meintel participated in the initial decision to revoke his Z

Code status and subsequently reviewed Plaintiff's grievance.  The record of the

case, however, shows that the grievance process was "capable of use to obtain

some relief for the action complained of,"[101] as Plaintiff filed a grievance under

DC-ADM 804 that he subsequently appealed through all stages of administrative

review.  Plaintiff does not explain how the purported unavailability of the

[98]  *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).
[99]  *Hardy v. Shaikh*, 959 F.3d 578, 584 (3d Cir. 2020) (quoting *Ross*, 578 U.S. at 643-44).
[100]  *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Tuckel*, 660 F.3d 1249, 1253-54 (10th Cir. 2011)).
[101]  *Ross*, 578 U.S. at 642 (internal quotation marks omitted).

grievance system prevented him from requesting monetary relief in his grievance and subsequent appeals but did not prevent him from filing the grievance and appeals in the first instance.

Furthermore, Plaintiff's argument that Meintel's participation in the review of his grievance rendered the grievance process unavailable is essentially an argument that inmates do not have to exhaust administrative remedies when doing so would likely be futile.  Federal courts, however, may not "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."[102]

Finally, even assuming that Meintel's review of Plaintiff's grievance made it unlikely that Plaintiff would obtain relief at the initial review stage, Plaintiff does not explain how Meintel's review of the grievance would have affected the subsequent appeals of his grievance.  There is no indication in the record that Meintel was involved in the review of Plaintiff's appeals to the Superintendent or SOIGA, and any defect in the initial proceeding caused by Meintel's involvement therefore could have been cured by the subsequent impartial reviews of the grievance by the Superintendent and SOIGA.  Accordingly, I conclude that Plaintiff failed to exhaust available administrative remedies with respect to his

---

[102] *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000).

grievance filed under DC-ADM 804 due to his failure to seek monetary relief in his grievance and associated appeals.

### 2.    Exhaustion Under DC-ADM 801

Under DC-ADM 801, an inmate who has been found guilty of a misconduct charge may appeal to the Program Review Committee ("PRC") for an initial review of the guilty finding within fifteen days of the hearing.[103]  The inmate's appeal must include a brief statement of the facts relevant to the appeal and the issues complained of on appeal.[104]  If the inmate is unsuccessful at the PRC level, he must appeal the PRC decision to the Superintendent/designee within seven calendar days.[105]  The Superintendent is required to review the appeal and forward a decision to the inmate within seven working days of the appeal being filed.[106]  If the inmate is unsuccessful before the Superintendent, he must appeal to the DOC's Chief Hearing Examiner's Officer within seven days.[107]  An inmate must appeal the disciplinary decision through all three stages of appeal to properly exhaust his administrative remedies.[108]

---

[103]  DC-ADM 804, DEPARTMENT OF CORRECTIONS, available at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/801%20Inmate%20Discipline.pdf
[104]  *Id.*
[105]  *Id.*
[106]  *Id.*
[107]  *Id.*
[108]  *See, e.g.*, *Saleem v. Brungart*, No. 3:19-CV-00025, 2020 WL 1130347, at *4 (M.D. Pa. Mar. 6, 2020).

The parties provide differing accounts of the material facts with respect to the issue of exhaustion under DC-ADM 801. According to Defendants, Plaintiff appealed the disciplinary decision against him on April 20, 2019, and his appeal was subsequently reviewed by a PRC comprised of Weissinger and two other staff members.[109] The PRC unanimously voted to uphold the misconduct verdict against Plaintiff.[110] Plaintiff appealed to the Superintendent, who granted Plaintiff's appeal and remanded the appeal to the PRC for further consideration.[111] The appeal was subsequently reconsidered by a different PRC comprising three other staff members.[112] Defendant Weissinger was not a member of this PRC.[113] The new PRC upheld the original disciplinary conviction, and Plaintiff appealed to the Superintendent.[114] The Superintendent upheld the decision.[115] Plaintiff did not seek further appeal.[116]

Plaintiff agrees that he appealed the initial disciplinary decision on April 20, 2019, that the PRC upheld the decision on May 8, 2019, and that Plaintiff then appealed to the Superintendent, but his account of the relevant facts differs once

---

[109]  Doc. 50 ¶ 19.
[110]  *Id.*
[111]  *Id.* ¶¶ 20-21.
[112]  *Id.* ¶ 23.
[113]  *Id.*
[114]  *Id.* ¶ 24.
[115]  *Id.* ¶ 25.
[116]  *Id.* ¶ 26.

the appeal to the Superintendent was filed.[117]   According to Plaintiff, a copy of the

Superintendent's decision remanding the appeal to the PRC for further proceedings

was never sent to Plaintiff, which led Plaintiff to file a grievance on May 26, 2019

asserting that he had never received the decision and that his ability to appeal to the

Chief Hearing Examiner's Office was therefore hindered.[118]   Plaintiff attaches a

copy of his May 26, 2019 grievance to support his version of events.[119] Plaintiff

asserts that because he never received a copy of the Superintendent's decision, he

filed an appeal to the Chief Hearing Examiner's Office on June 15, 2019.[120]

Plaintiff did not receive a timely response from the Chief Hearing Examiner, so on

July 15, 2019, he wrote a follow-up letter.[121]   The Chief Hearing Examiner

responded on July 29, 2019, rejecting Plaintiff's appeal for failure to attach the

appropriate paperwork.[122]   Plaintiff attempted to remedy this error through another

---

[117]   Although Plaintiff has provided his account of the relevant facts in his brief in opposition to the motion for summary judgment rather than his response to Defendants' statement of material facts as required by Local Rule 56.1, I will excuse this procedural error because Plaintiff is proceeding *pro se* and because he has clearly supported his factual contentions with references to record evidence.  *See Sause v. Bauer*, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018) (noting that courts must interpret *pro se* filings liberally); *Rittenhouse Ent't, Inc. v. City of Wilkes-Barre*, No. 3:11-CV-00617, 2018 WL 3756711, at *10 (M.D. Pa. Aug. 8, 2018) (noting that when nonmovant's response to statement of material facts does not respond to factual assertion in movant's statement, the court should deem the assertion admitted except where the nonmovant has clearly disputed the factual assertions with adequate record references), *vacated in nonrelevant part*, 782 F. App'x 148 (3d Cir. 2019).

[118]   Doc. 62 at 9.

[119]   *See* Doc. 63-1 at 65.

[120]   Doc. 62 at 9.

[121]   *Id.*  Plaintiff's July 15, 2019 letter to the Chief Hearing Examiner is attached as an exhibit to his brief and is docketed at Doc. 63-1 at 58.

[122]   *See* Doc. 62 at 9; Doc. 63-1 at 59.

22

letter to the Chief Hearing Examiner on August 4, 2019,[123] but the Chief Hearing Examiner again rejected the appeal on August 14, 2019.[124]  In the letter rejecting Plaintiff's appeal, the Chief Hearing Examiner stated that Plaintiff's claim that he had not received a response from the Superintendent did not entitle Plaintiff to appeal directly to the Chief Hearing Examiner.[125]  Plaintiff asserts that the Chief Hearing Examiner's August 14, 2019 letter was the first time that he learned that his original appeal had been remanded to the PRC for further consideration.[126]

Defendants argue that Plaintiff failed to exhaust his administrative remedies under DC-ADM 801 with respect to his misconduct charge because he failed to properly file a final appeal to the Chief Hearing Examiner.[127]  Plaintiff argues that the administrative remedy system was made unavailable when the Superintendent failed to provide him with a copy of the order remanding the appeal to the PRC within seven days.[128]

Having reviewed the parties' arguments and the material facts, I find that there is a genuine issue of material fact as to whether the grievance system was rendered unavailable to Plaintiff by the actions of DOC officials.  Plaintiff has submitted evidence that could support the conclusion that prison officials failed to

---

[123] *See* Doc. 62 at 9; Doc. 63-1 at 60.
[124] *See* Doc. 62 at 9-10; Doc. 63-1 at 62.
[125] Doc. 63-1 at 62.
[126] Doc. 62 at 10.
[127] Doc. 57 at 12-13.
[128] Doc. 62 at 10-11.

give Plaintiff a copy of the Superintendent's decision within seven days as required by DC-ADM 801.[129]  A prison grievance system is rendered unavailable "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies."[130]  Because there is a genuine dispute of material fact as to whether that occurred in this case, I find that summary judgment on the issue of exhaustion is precluded with respect to Plaintiff's claim against Defendant Weissinger arising from Plaintiff's disciplinary hearing.  I accordingly turn my attention to the merits of that claim.

### B.    Merits

Plaintiff's sole remaining claim is his First Amendment retaliation claim against Defendant Weissinger arising from Plaintiff's disciplinary hearing.  A plaintiff bringing a retaliation claim under 42 U.S.C. § 1983 must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against the plaintiff that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the plaintiff's protected conduct and the defendant's retaliatory action.[131]  Causation may be established by showing either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly

---

[129]  *See* Doc. 63-1 at 65.
[130]  *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019).
[131]  *Javitz v. Cty. of Luzerne*, 940 F.3d 858, 863 (3d Cir. 2019).

retaliatory action or a pattern of antagonism coupled with timing.[132]  Causation

may also be implied by "the record as a whole."[133]

      Defendants argue that Weissinger is entitled to summary judgment because

Plaintiff cannot establish that Weissinger's actions were sufficiently adverse to

support a retaliation claim or that there was a causal connection between Plaintiff's

protected conduct and Weissinger's actions.[134]  Plaintiff argues that the revocation

of his Z Code status and the misconduct charges against him were sufficiently

adverse actions to support a retaliation claim.[135]  He further argues that there is

sufficient evidence to find causation because his Z Code status was revoked shortly

after he and the other inmates reported Damiter's alleged wrongdoing to the

Attorney General.[136]  Finally, Plaintiff argues that "Defendant Weissinger

falsifying a misconduct was clearly in furtherance of Damiter's retaliation."[137]

      I have reviewed the parties' arguments and the relevant evidence, and I

conclude that Defendant Weissinger is entitled to summary judgment because

Plaintiff has not proffered any evidence to establish a causal connection between

Plaintiff's conduct and Defendant Weissinger's allegedly retaliatory actions.

---

[132] *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 361-62 (3d Cir. 2021) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

[133] *Id.* (citing *DeFlaminis*, 480 F.3d at 267).

[134] Doc. 57 at 14-16.

[135] Doc. 62 at 13-15.

[136] *Id.* at 13.

[137] *Id.*

Plaintiff asserts that there was an unusually suggestive temporal proximity between when he reported Defendant Damiter's alleged misconduct and when Plaintiff's Z Code was revoked, but beyond the conclusory assertion that Weissinger falsified documents in furtherance of Damiter's retaliation, Plaintiff offers nothing to show how this connects to Defendant Weissinger.  In fact, Plaintiff has clarified in his brief that "Weissinger . . . was not part of the initial plan to remove Plaintiff's Z-Code."[138]  Thus, it appears that Plaintiff is attempting to hold Weissinger liable for retaliation based solely on assumptions and conjecture, which is not sufficient to survive Defendants' motion for summary judgment.  I will therefore grant Weissinger summary judgment.

## V.     CONCLUSION

For the foregoing reasons, the motion for summary judgment will be granted.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[138]  *Id.* at 5.